### PORTHUS ALLEN *vs.* COMMONWEALTH.

Suffolk.    March 9, 1949. — July 27, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Constitutional Law,* Assignment of counsel, Due process of law.  *Practice, Criminal,* Assignment of counsel.

Neither the Constitution nor the statutes of Massachusetts require an assignment of counsel to represent a defendant unable to employ counsel in a noncapital criminal case.

The Fourteenth Amendment to the Federal Constitution does not require an assignment of counsel to represent a defendant unable to employ counsel in every noncapital criminal case, but only in those instances where there are particular circumstances requiring such an assignment in order to secure to the defendant the fundamentals of a fair trial.

The record before this court disclosed no particular circumstances requiring an assignment of counsel in order to secure the fundamentals of a fair trial to a man of mature years, with a common school education and "quite intelligent for one with his background and education," who was charged with, tried for, and convicted of murder in the second degree and was unable to employ counsel.

PETITION for a writ of error, filed in the Supreme Judicial Court for the county of Suffolk on July 1, 1948.

Following the issuance of the writ and a return and a plea, the case was heard by *Spalding,* J.

*J. V. Carroll,* for the plaintiff in error.

*G. Miraldi,* Assistant District Attorney, for the Commonwealth.

QUA, C.J.  On October 7, 1932, the plaintiff in error, hereinafter called the petitioner, was indicted for murder in the second degree and pleaded not guilty.  On October 25 he was put to trial before a jury in the Superior Court and was found guilty.  He was sentenced to imprisonment for life — the punishment prescribed by our statute for the offence charged.  G. L. (Ter. Ed.) c. 265, § 2.  Nearly sixteen years later, on July 2, 1948, he sued out his writ of error in this court, assigning as error that he was tried without the benefit of counsel in violation of his rights under art. 12 of the Declaration of Rights of the Constitution of Massachusetts and under the Fourteenth Amendment to the Constitution of the United States.  The single justice of this court, after a full hearing on the facts, ordered the judgment affirmed.  G. L. (Ter. Ed.) c. 250, § 9.  The case is here on the petitioner's exceptions.

The single justice made careful and complete findings of fact.  At the time of the petitioner's arraignment, or shortly thereafter, he was informed that the court did not appoint counsel for those unable to pay for counsel, except in capital cases.  When the case was called for trial the presiding judge asked the petitioner whether he had a lawyer.  He replied truthfully that he had not, and that he had no money to employ counsel.  The trial judge informed him that he had a right to have counsel, but that the Commonwealth did not furnish counsel for one accused of murder in the second degree.  The single justice of this court was not satisfied that the petitioner ever went so far as to request the trial judge to appoint counsel for him, but the single justice attached little or no importance to that fact.  The single justice inferred that, if the petitioner had had the right to require the assistance of counsel, he would have availed himself of it.  The trial judge told the petitioner, rather too modestly, we think, that he would assist the petitioner "to the best of his ability."  The petitioner was a colored man thirty-two years of age and was employed as a porter in a barber shop.

The remainder of the findings we give in the language of

the single justice. "At school he [the petitioner] had gone as far as the eighth grade. Shortly after his arrest the petitioner was examined by the department of mental diseases pursuant to G. L. (Ter. Ed.) c. 123, § 100A. The doctors who examined him reported that 'intellectually he [was] within normal limits' and that 'he show[ed] no mental disease or defect.' While testifying in the present proceedings the petitioner impressed me as being quite intelligent for one with his background and education. . . . The petitioner admitted that prior to the trial now under consideration he had been in court on criminal charges two or three times. Although this evidence was introduced without objection, I stated that I would consider it only as bearing on the petitioner's knowledge or lack of knowledge of court procedure. I do not infer from this evidence that the petitioner's knowledge of court procedure amounted to much. The evidence establishes no more than that the petitioner was not wholly unfamiliar with such procedure. During the trial the rights and privileges of the petitioner were fully and carefully explained to him by the judge. Witnesses called by the Commonwealth were cross-examined by the petitioner and the judge assisted in this examination. After the Commonwealth had finished putting in its evidence the petitioner was informed of his rights with respect to taking the stand or remaining silent. He took the stand and testified in his own behalf. He called no other witness. Before the trial began the petitioner was told by one of the assistant district attorneys that if he wanted any witnesses summoned he would take care of it for him. The petitioner requested one witness but did not know his address or where he could be located. An attempt to find the witness was made but he could not be located. The petitioner did not argue his case to the jury and no argument was made by the Commonwealth. The trial lasted for a day and a half."

So far as the law of this Commonwealth is concerned, in noncapital cases, the practice of trying defendants who are not represented by counsel has come down to us from ancient times. The provision in art. 12 of the Declaration of Rights

that every subject shall have a right "to be fully heard in his defence by himself, or his counsel, at his election" has never been deemed to require the court to appoint counsel, even if the defendant is indigent. Apparently the first statutory provision on the subject is to be found in St. 1820, c. 14, § 8. This provision was limited to capital cases and has continued so limited through subsequent enactments [1] down to and including G. L. (Ter. Ed.) c. 277, § 47. It has been said that, at least when considered in connection with § 55, it requires the assignment of counsel in capital cases, if the prisoner is otherwise unable to procure counsel. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 26. *Commonwealth* v. *Millen*, 289 Mass. 441, 453. Sections 55 and 56 of this same chapter (originating in St. 1893, c. 394, §§ 1, 2), in which the word "murder" is used without express reference to the degree, relate to the compensation and expenses of counsel duly assigned and do not purport to define the occasions when counsel must be assigned. Formerly it was the custom of assigned counsel to serve without compensation as a part of their professional obligations. *Attorney General, petitioner*, 104 Mass. 537, 543. There is no provision whatever for assignment of counsel for defendants accused of rape or of certain forms of robbery, which are not capital offences, but for which sentences of life imprisonment may be imposed, as in cases of murder in the second degree. G. L. (Ter. Ed.) c. 265, §§ 22, 23; § 17, as appearing in St. 1943, c. 250, § 1; and § 19. See §§ 21, 24. It is also to be noted that G. L. (Ter. Ed.) c. 276, § 37A, as inserted by St. 1932, c. 180, § 43, providing for the assignment of counsel for the preliminary examination before a District Court or trial justice, applies only to capital cases. General Laws (Ter. Ed.) c. 263, § 5, is similar to the constitutional provision and adds nothing to it. It must be regarded as settled by *McDonald* v. *Commonwealth*, 173 Mass. 322, 324, 327, that neither in its constitutional nor in its statutory

---

[1] St. 1832, c. 130, § 6. Rev. Sts. c. 81, § 16; c. 136, § 22. Gen. Sts. c. 112, § 9. Pub. Sts. c. 150, § 19. St. 1891, c. 379, § 4. R. L. c. 157, § 10. Compare, however, St. 1859, c. 196, § 21, repealed by Gen. Sts. c. 182.

provisions does the law of this Commonwealth require that a person charged with other than a capital offence be furnished counsel. This conclusion is reënforced by certain expressions and dicta in other cases. *Attorney General, petitioner,* 104 Mass. 537, 542–544. *Conant* v. *Burnham,* 133 Mass. 503, 506. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 26. *Commonwealth* v. *Millen,* 289 Mass. 441, 453.

The petitioner relies chiefly upon the contention that the due process of law clause of the Fourteenth Amendment to the Constitution of the United States, as interpreted in a series of recent decisions of the Supreme Court, required the assignment of counsel. Nothing useful would be accomplished by an attempt on our part to analyze these decisions. There is at present a sharp difference of opinion in that court, upon the final outcome of which it is not our province to speculate. We accept the law as fixed at the point now reached by actual majority decisions of the court. To the best of our understanding the law so determined does not require the assignment of counsel in every noncapital case, even though the charge be a serious one. That law, as we understand it, requires assignment of counsel in noncapital cases only when the defendant, by reason of youth, inexperience, or incapacity of some kind, or by reason of some unfair conduct by the public authorities, or of complication of issues, or of some special prejudice or disadvantage, stands in need of counsel in order to secure the fundamentals of a fair trial. We rely particularly upon *Betts* v. *Brady,* 316 U. S. 455, which we do not discover to have been overruled, and upon *Foster* v. *Illinois,* 332 U. S. 134, *Bute* v. *Illinois,* 333 U. S. 640, and *Uveges* v. *Pennsylvania,* 335 U. S. 437. Other cases on the subject are collected in the footnote. [1]

In the present case we are unable to find any special cir-

---

[1] *Powell* v. *Alabama,* 287 U. S. 45. *Williams* v. *Kaiser,* 323 U. S. 471. *Tomkins* v. *Missouri,* 323 U. S. 485. *Rice* v. *Olson,* 324 U. S. 786. *Hawk* v. *Olson,* 326 U. S. 271. *Canizio* v. *New York,* 327 U. S. 82. *Carter* v. *Illinois,* 329 U. S. 173. *De Meerleer* v. *Michigan,* 329 U. S. 663. *Gayes* v. *New York,* 332 U. S. 145. *Wade* v. *Mayo,* 334 U. S. 672. *Gryger* v. *Burke,* 334 U. S. 728. *Townsend* v. *Burke,* 334 U. S. 736. *Gibbs* v. *Burke,* 337 U. S. 773.

cumstance or combination of circumstances making the assignment of counsel necessary. If such an assignment is not an absolute requirement in every case of a serious charge, it would seem that it was not a requirement in this case. The defendant was of mature years. He had had a common school education, was not mentally defective, and was "quite intelligent for one with his background and education." There is no suggestion whatever of any unfairness at the trial. On the contrary, "During the trial the rights and privileges of the petitioner were fully and carefully explained to him by the judge." Whatever may be the inherent limitations upon the assistance a trial judge can render to a defendant, it is nevertheless true that under the practice long prevailing in this Commonwealth constant explanation and instruction as to his rights by the judge to a defendant on trial without counsel are far from perfunctory and are regarded as a sacred duty. There is no reason to suppose that that duty was not fully and painstakingly performed in this instance in accord with the best traditions of Massachusetts justice. The case presented no peculiar complexity of issues — none any greater, for example, than in *Carter* v. *Illinois*, 329 U. S. 173. There is no reason to doubt that the nature of the accusation was carefully explained to the jury at the trial, or that the evidence to meet it was properly brought out.

We discover no reason for disturbing the judgment.

*Exceptions overruled.*