Commonwealth v. Blondin.

COMMONWEALTH vs. JOHN H. BLONDIN
(and five companion cases [1]).

Berkshire.    Suffolk.    May 2, 1949. — July 27, 1949.

Present: QUA, C.J., DOLAN, RONAN, SPALDING, & WILLIAMS, JJ.

*Constitutional Law*, Assignment of counsel, Due process of law, Public
trial. *Practice, Criminal*, New trial, Assignment of counsel, Public
trial, Discretionary control of evidence, Trial of defendants together.
*Evidence*, Leading question.    *Words*, "In camera," "Behind closed
doors," "Law of the land."

Questions of fact arising on a motion for a new trial of a criminal case
are for the judge hearing the motion.
A judge hearing a motion for a new trial of a criminal case, by passing
upon requests for rulings of law by the defendant and allowing a bill
of exceptions based thereon, exercised his discretion in favor of con-
sidering the questions of law so raised even though they were or could
have been raised at the trial, and such questions were open in this
court.
Neither the Constitution nor the statutes of Massachusetts require an
assignment of counsel to represent a defendant unable to employ
counsel in a noncapital criminal case.
The Fourteenth Amendment to the Federal Constitution does not require
an assignment of counsel to represent a defendant unable to employ
counsel in every noncapital criminal case, but only in those instances
where there are particular circumstances requiring such an assignment
in order to secure to the defendant the fundamentals of a fair trial.
The record before this court disclosed no particular circumstances re-
quiring an assignment of counsel in order to secure the fundamentals
of a fair trial to men of mature years, not shown not to be of average
intelligence, who were charged with, tried for, and convicted of rape
and abuse of a female under the age of sixteen years and were unable
to employ counsel.
A statement by a trial judge, that defendants charged with rape and
abuse of a female under sixteen years of age were "tried in camera
behind closed doors," meant on the record merely that he had excluded
the general public from the court room in accordance with G. L.
(Ter. Ed.) c. 278, § 16A.
Discussion by QUA, C.J., of the scope, meaning, and purpose of G. L.
(Ter. Ed.) c. 278, § 16A, requiring the exclusion of the "general pub-

[1] The companion cases are those of John H. Blondin vs. Commonwealth,
Commonwealth vs. Elmer A. Melanson, Elmer A. Melanson vs. Common-
wealth, Commonwealth vs. Ronald W. Morin, and Ronald W. Morin vs.
Commonwealth.

lic" from the court room at the trial of certain kinds of criminal cases and the admission thereto of "only such persons as may have a direct interest in the case."

Action in accordance with G. L. (Ter. Ed.) c. 278, § 16A, by the judge presiding at a criminal trial does not deny to the defendant due process of law in violation of either art. 12 of the Declaration of Rights of the Massachusetts Constitution or the Fourteenth Amendment to the Federal Constitution.

The allowance of leading questions by the prosecutor at a criminal trial is within the discretion of the trial judge.

No error appeared in the trial together of separate indictments against three defendants for rape and carnal abuse of the same female on the same occasion.

THREE INDICTMENTS, found and returned on January 16, 1946.

Motions for a new trial were heard and denied by *Sullivan*, J.

THREE PETITIONS for writs of error, filed in the Supreme Judicial Court for the county of Suffolk on January 5, 1948.

Following the issuance of the writs and returns and pleas, the cases were reserved and reported, without decision, by *Dolan*, J.

*W. H. Lewis, Jr.*, (*M. J. John* with him,) for the defendants-plaintiffs in error.

*S. E. Levine*, Assistant District Attorney, for the Commonwealth.

QUA, C.J. These six cases all grow out of the separate indictment and conviction of each of the three defendants of the crimes of rape and of abuse of a female child under sixteen years of age. Each of the three indictments charged the two crimes in separate counts. The extreme penalty for each crime is life imprisonment. G. L. (Ter. Ed.) c. 265, §§ 22, 23. The three indictments were tried together and resulted in verdicts of guilty against each defendant on each count. The trial judge sentenced each defendant on each count to imprisonment in the State prison for a term of forty to fifty years, the sentences on the two counts of each indictment to run concurrently. The Appellate Division of the Superior Court reduced the sentence on each count in

each case to from twenty-five to thirty years. G. L. (Ter. Ed.) c. 278, §§ 28A–28D, as inserted by St. 1943, c. 558, § 1, and as affected and amended in §§ 28A, 28B, and 28C by St. 1945, c. 255, §§ 1, 2, 3. The period of actual confinement is subject to further substantial reduction for good conduct and for satisfactory and diligent performance of work (G. L. [Ter Ed.] c. 127, § 129, as appearing in St. 1948, c. 450, § 1) and is subject to the possibility of parole as provided by law after a period of two thirds of the minimum sentence has elapsed. See G. L. (Ter. Ed.) c. 127, § 133, as amended by St. 1946, c. 254.

The six cases now before us consist of a bill of exceptions taken in connection with a motion for new trial upon each of the original indictments and a reservation and report by a single justice of this court of proceedings upon writs of error sued out by the original defendants. The motions for new trial were filed after sentence but within the time allowed by G. L. (Ter. Ed.) c. 278, § 29, as appearing in St. 1939, c. 271, § 1.

The grounds of the motions for new trial are, except one, substantially the same as to each of the three defendants. They consist of various allegations of fact and assertions of errors of law. The motions were fully heard by the trial judge. It is plain that many of the allegations of fact were not believed by him. The facts were for him and not for us to determine. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25–26. The bills of exceptions do not, in general, disclose what evidence was introduced at the hearing of the motions, so that we could not decide facts even if questions of fact were within our province. The trial judge did make certain findings of fact, which we must accept as true. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 495. He also admitted in evidence at the hearing on the motions the full transcript of the evidence at the original trial, and this is included in the bills of exceptions. This evidence we may use in so far as it bears on any questions arising out of the motions as to errors of law in the conduct of the trial.

Ordinarily such errors occurring during the progress of a

trial should be followed by immediate objection and exception, in order that they may be corrected at once, and cannot become the ground of a subsequent motion for new trial, unless the judge sees fit in his discretion to reconsider the matters involved. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24. *Commonwealth* v. *McKnight*, 289 Mass. 530, 543–544. *Commonwealth* v. *Galvin*, 323 Mass. 205, 220. But in this instance the judge passed seriatim upon all the defendants' requests for findings and rulings and has allowed bills of exceptions founded upon them. We think that he exercised his discretion in favor of considering them, as he might well do in the circumstances. We are further of opinion that this course has preserved for our consideration the questions of law as to which exceptions have been duly saved. This accords with the decision in *Peterson* v. *Hopson*, 306 Mass. 597, 602–603, and with a number of intimations in others of the more recent cases. *Loveland* v. *Rand*, 200 Mass. 142, 146. *Ryan* v. *Hickey*, 240 Mass. 46, 48. *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 109. *Commonwealth* v. *McKnight*, 289 Mass. 530, 543–544. *Commonwealth* v. *Millen*, 290 Mass. 406, 408. *Squires* v. *Toye*, 291 Mass. 342, 343. *Ross* v. *Colonial Provision Co. Inc.* 299 Mass. 39, 42. It has been said that the practice is the same on both the civil and criminal sides of the court. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25. *Commonwealth* v. *Gedzium*, 261 Mass. 299. We therefore deal with all substantial questions of law raised by exceptions in connection with the motions for new trial and argued in this court.

1. There was no violation of art. 12 of the Declaration of Rights of the Constitution of Massachusetts or, in our opinion, of the Fourteenth Amendment to the Constitution of the United States in putting the defendants to trial without the assistance of counsel. The defendants were never deprived of their right to have counsel in accordance with our Declaration of Rights. They had ample opportunity to procure counsel between January 4, 1946, and January 22, 1946. The only reason, as found by the trial judge, why they did not have counsel was their "inability to pay for

the same." Article 12 of the Declaration of Rights does not require that counsel be furnished, and we may add that no statute requires it in noncapital cases. All this is fully explained in the case of *Allen* v. *Commonwealth*, which has been considered in connection with the present cases and is also decided this day.

In reference to the Fourteenth Amendment we said in the *Allen* case that we accept the law as fixed at the point now reached by actual majority decisions of the Supreme Court of the United States, and that "To the best of our understanding the law so determined does not require the assignment of counsel in every noncapital case, even though the charge be a serious one. That law, as we understand it, requires assignment of counsel in noncapital cases only when the defendant, by reason of youth, inexperience, or incapacity of some kind, or by reason of some unfair conduct by the public authorities, or of complication of issues, or of some special prejudice or disadvantage, stands in need of counsel in order to secure the fundamentals of a fair trial." We there relied particularly upon *Betts* v. *Brady*, 316 U. S. 455, *Foster* v. *Illinois*, 332 U. S. 134, *Bute* v. *Illinois*, 333 U. S. 640, and *Uveges* v. *Pennsylvania*, 335 U. S. 437. The other cases on the subject are cited in the *Allen* case. In the cases now before us none of those elements is present. The transcript of the evidence at the trial shows that the three defendants snatched a young girl forcibly on a public road in the early darkness of a winter evening, placed her in an automobile, and carried her to a secluded spot, where after a struggle in which she sustained some injuries each of the three defendants raped her twice. All three of the defendants were mature married men. There is no suggestion that they were not of average intelligence. In no way were they unfairly treated. Allegations tending to the contrary in the motions for new trial are not borne out by the transcript or by the findings of the judge. The trial judge saw to it throughout the trial that the defendants were informed of their rights in accordance with the practice in Massachusetts courts when a defendant is not represented by counsel.

The issues were not complicated, but were such as anyone could understand. The defendants were subject to no special prejudice or disadvantage of any kind. The evidence of the commission of the crimes and of the identification of the defendants as the perpetrators was so overwhelming that it is impossible to conceive that the result would have been different if they had had counsel.

2. The defendants except on the ground that they were tried "in camera behind closed doors." The trial judge found that they were "tried in camera behind closed doors," but ruled "that same" was not in violation of their rights. It is perhaps unfortunate that the trial judge, instead of adopting the precise words of the requests presented to him by the defendants,[1] did not state with particularity exactly what order of exclusion he made. Nevertheless, his finding must be interpreted in the light of the governing statute and of the universal practice in Massachusetts courts. It will not do to give to the words "in camera" and "behind closed doors" any sinister connotation or any significance beyond that fairly to be understood upon consideration of the statute and the practice in the absence of any evidence that the order went beyond what might reasonably have been expected. The governing statute is G. L. (Ter. Ed.) c. 278, § 16A, quoted in full in the footnote.[2] This section was originally enacted by St. 1923, c. 251, and was cast in its present mold by St. 1931, c. 205. We assume that at common law, apart from statute, the defendants would have had a right to a trial to which the general public were admitted. Wigmore on Evidence (3d ed.) § 1834. *Scott* v. *Scott*, [1913] A. C. 417. *In re Oliver*, 333 U. S. 257, and notes thereto. See *Cowley* v. *Pulsifer*, 137 Mass. 392, 394. At

---

[1] Each defendant requested the judge to rule that "the defendant was tried in camera behind closed doors in violation of his rights to a public trial." — REPORTER.

[2] "At the trial of a complaint or indictment for rape, incest, carnal abuse or other crime involving sex, where a minor under eighteen years of age is the person upon, with or against whom the crime is alleged to have been committed, or at the trial of a complaint or indictment for getting a woman with child out of wedlock, or for the non-support of an illegitimate child, the presiding justice shall exclude the general public from the court room, admitting only such persons as may have a direct interest in the case."

all events, it may fairly be said to be the universal practice of our courts, especially in criminal cases, to keep the doors open, except as otherwise provided by statute.[1] The universality of this practice is attested by the absence of any decisions of this court on the subject. Nothing in the records would justify us in supposing that the trial judge acted otherwise than as enjoined upon him by the controlling statute. It is plain from the records that the trial was not "in camera" within any accurate definition of those words. The question then becomes, in substance, one of the constitutionality of the statute.

We are not prepared to hold the statute unconstitutional. There is nothing in the Constitution of this Commonwealth corresponding to the right to a "public trial" expressly granted by the Sixth Amendment to the Constitution of the United States, and there is nothing to prevent the enactment of such a statute as § 16A, unless an absolutely public trial is comprehended within the words "the law of the land" at the end of the first paragraph of art. 12 of the Declaration of Rights.[2] This expression, derived from Magna Charta (A. D. 1215), and inserted in our Constitution in 1780, could not, we think, have been designed to prevent the enactment of a reasonable statute merely forbidding the attendance of the general public at certain types of criminal trials where the Legislature, upon balanc-

---

[1] A similar provision for the exclusion of the general public from juvenile sessions is found in G. L. (Ter. Ed.) c. 119, § 65, as amended by St. 1932, c. 95, § 2. A provision authorizing exclusion of the general public during the trial of any criminal proceeding involving husband and wife was recently enacted by St. 1949, c. 302, and is now G. L. (Ter. Ed.) c. 278, § 16B. By G. L. (Ter. Ed.) c. 220, § 13, minors as spectators merely may be excluded from any court room.

[2] This article reads as follows: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land.

"And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury."

ing the arguments one way and the other, could reasonably determine that the public interest would be better served by exclusion. The statute in question is of very limited scope, and in respect to cases of rape and carnal abuse applies only where the person against whom the crime is alleged to have been committed is under eighteen years of age. It calls only for exclusion of "the general public" as distinguished from "such persons as may have a direct interest in the case." It is to be strictly construed in favor of the general principle of publicity. The expression "such persons as may have a direct interest in the case" must be interpreted broadly. It was certainly not intended to be limited to the parties. It must include counsel, witnesses, stenographers, and the usual court attendants, even if they have no "direct interest" in the ordinary sense. The intent was to distinguish between persons having a legitimate reason for being present and mere idle spectators who are often attracted in large numbers to sensational trials involving sex issues, not only to the detriment of the community but sometimes to the degradation of justice itself. We do not construe the statute as excluding a parent, husband, wife, or guardian of a defendant or even a friend whose presence he desires and who might give him legitimate assistance or comfort without interfering with the trial. The title of St. 1931, c. 205, from which the present § 16A is directly derived, is "An Act to protect female witnesses involved in illegitimacy proceedings and in crimes involving sex." Doubtless it was thought that female witnesses in particular would come forward, institute complaints, and testify with less reluctance, so that more justice would be accomplished, if they could be relieved from the inhibitions imposed by the presence of a curiosity impelled audience. This line of reasoning is well illuminated in *State* v. *Callahan,* 100 Minn. 63. Even in the absence of a statute, it has been held in a number of cases that at common law the general public may be excluded from the court room for sufficient reasons, even where the Constitution requires a "public" trial. *People* v. *Swafford,* 65 Cal. 223.

*People* v. *Kerrigan,* 73 Cal. 222 (but see *People* v. *Hartman,* 103 Cal. 242). *Benedict* v. *People,* 23 Colo. 126. *Stone* v. *People,* 3 Ill. 326, 337–338. *State* v. *Croak,* 167 La. 92. *State* v. *Callahan,* 100 Minn. 63. *State* v. *Genese,* 102 N. J. L. 134, 141–142. *State* v. *Nyhus,* 19 N. D. 326. *Reagan* v. *United States,* 202 Fed. 488. There are also decisions to the contrary such as *Rhoades* v. *State,* 102 Neb. 750, *People* v. *Yeager,* 113 Mich. 228, *State* v. *Hensley,* 75 Ohio St. 255, *State* v. *Osborne,* 54 Ore. 289, and *Davis* v. *United States,* 247 Fed. 394. See discussion in Wigmore on Evidence (3d ed.) § 1835. And see *Tanksley* v. *United States,* 145 Fed. (2d) 58, and cases collected in 156 A. L. R. 265. Numerous jurisdictions have passed exclusion statutes more or less resembling the one here under consideration. Many are collected in Wigmore on Evidence (3d ed.) § 1835. One such statute was held valid, notwithstanding a constitutional requirement of a "public" trial, in *Moore* v. *State,* 151 Ga. 648.

The trial of these defendants was not a "Star Chamber" proceeding. All the testimony was taken in their presence. The complete stenographic record was available to them for any appropriate purpose. They were tried by a jury. It does not appear that the press was excluded, even if the statute could be interpreted as permitting such exclusion, which we need not decide. It does not appear that any person whom any of the defendants desired to have present was excluded. The absence of counsel in their behalf was certainly not due to the exclusion order.

We are of opinion that there was no violation of the Constitution of this Commonwealth. As for the Constitution of the United States, if the failure of a State to provide counsel as required in courts of the United States by the Sixth Amendment is not, except in special circumstances, a denial of due process of law under the Fourteenth Amendment, we do not understand how the failure to provide a wholly "public" trial as required in courts of the United States by the same Sixth Amendment can, in the circumstances here existing, be a denial of due process of law under the Four-

teenth Amendment. *Gaines* v. *Washington,* 277 U. S. 81, 85. The case of *In re Oliver,* 333 U. S. 257, differs from the present cases in so many respects that we do not consider it controlling, nor do we think that a detailed discussion of it is necessary.

3. In the defendants' brief reference has been made to several other points as to which exceptions were taken. It is not clear that any of these exceptions was intended to be argued apart from the issues already discussed, but we have considered all as to which any plausible contention could be made that they have been argued and not waived. It is true that certain leading questions were allowed to be put, but the transcript as a whole shows that the witnesses gave their own testimony without undue suggestion by the district attorney. The allowance of leading questions is almost wholly within the discretion of the trial judge. *Commonwealth* v. *Sheppard,* 313 Mass. 590, 597. The evidence furnished by the torn piece of cloth, the barrette, and the footprints in the snow was plainly competent. Detailed discussion would unduly extend this opinion. The judge declined to find the facts alleged in the defendant Blondin's requests numbered 5 to 7, inclusive, on which he relied in support of his contention that he was physically unable to commit the crimes charged. There was no newly discovered evidence and no error of law in relation to this contention. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 495–497.

The writs of error require no separate consideration other than to say that there was no error in trying the defendants together. *Commonwealth* v. *Gallo,* 275 Mass. 320. *Commonwealth* v. *Snyder,* 282 Mass. 401, 410. *Commonwealth* v. *Millen,* 289 Mass. 441, 459–460. *Commonwealth* v. *Barker,* 311 Mass. 82, 89.

All exceptions are overruled. On each writ of error the rescript will be "judgment affirmed."

*So ordered.*

## MEMORANDA.

On the twentieth day of August, 1949, the Honorable ARTHUR WALTER DOLAN resigned the office of Associate Justice of this court, which he had held since the eighth day of October, 1937.

On the sixth day of September, 1949, the Honorable EDWARD AUGUSTINE COUNIHAN, JUNIOR, was appointed an Associate Justice of this court. He first sat with the court in Boston on the twelfth day of September, 1949.