O'BRIEN, Warden, v. LINDSEY.

No. 4717.

United States Court of Appeals
First Circuit.

Heard April 7, 1953.

Decided May 4, 1953.

Arnold H. Salisbury, Asst. Atty. Gen. of Massachusetts (George Fingold, Atty. Gen. of Massachusetts, with him on the brief), for appellant.

Wilbur G. Hollingsworth, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Frederick Lindsey is held in Massachusetts State Prison under sentences imposed by the Superior Court for Suffolk County, Massachusetts, after trial and conviction upon two indictments, one charging the crime of incest and the other carnal abuse of a female child.

Subsequent to his conviction he filed in the Supreme Judicial Court for Suffolk County a petition for a writ of error, charging that the judgments of conviction were void because his trial and conviction were in violation of his rights under the Fourteenth Amendment. This proceeding went against him; we shall have more to say of it later.

Lindsey then filed in the United States District Court for the District of Massachusetts a petition for a writ of habeas corpus. The district court issued the writ. Respondent filed his return and answer. A full hearing was had. The district judge made detailed findings of fact, upon the basis of which he determined that petitioner's convictions were obtained without due process of law. His final order on the petition was "that the applicant be remanded to the custody of the respondent Warden, who is ordered to present this applicant to the proper State Court for a new trial within thirty days or to discharge him from custody at the expiration of that time." [1]

The Commonwealth has appealed from the aforesaid final order. An application by appellee for an order of enlargement upon his own recognizance pending this appeal was denied by us in O'Brien v. Lindsey, 1 Cir., 1953, 202 F.2d 418.

There is no real dispute as to the essential facts.

Lindsey was arrested on March 1, 1949. After two days' detention in the police station, he was taken to the Boston Municipal Court and bound over for the grand jury; and being unable to furnish bail he was committed to jail. On March 15, 1949, the grand jury returned the two indictments. Petitioner was arraigned on the same day. It was alleged in the petition, and admitted in respondent's answer, that before pleading to the two indictments petitioner "spoke directly to the presiding Judge and said that he was without funds and in need of a lawyer and asked that counsel be appointed to defend him, whereupon the clerk said that Massachu-

1. This order would presumably result in petitioner's ultimate release if, as alleged in the petition, "Several months after your applicant's incarceration, his daughter wrote several letters indicating that she and her mother had lied at his trial and asking forgiveness for the lies she had told."

setts did not appoint counsel 'in this kind of a case'. [Cf. Allen v. Commonwealth, 1949, 324 Mass. 558, 87 N.E.2d 192.] He thereupon pleaded not guilty and trial was set for Friday, March 18. At no time did anyone speak to him to inquire whether or not he had a defense and needed assistance, nor did anyone inform him that he had a right to request the Commonwealth to summon witnesses for his defense at the Commonwealth's expense under the provisions of the General Laws of Massachusetts, Chapter 277, Section 66."

Petitioner was taken on March 18 to the Suffolk Superior Court, and he spent most of the day in the detention room. His case was on the daily trial list, which was called in the First Session, but was not actually reached for trial on that day, although later in the day the case was sent to the Third Session for trial. It does not appear that the defendant knew or was advised of this transfer; apparently he simply knew that his case had been set for trial on Monday, March 21, but did not know it was to be in the Third Session. After being returned to the jail that afternoon, petitioner learned that as an indigent defendant he might obtain the services of the Voluntary Defenders Committee. Mr. Dwyer, one of the attorneys of this committee, was at the jail at the time, and petitioner contrived a brief interview with him. Upon being informed that the trial was set for the following Monday, Mr. Dwyer indicated that he needed more time for investigation and would undertake to procure a continuance of the case.

The following Monday Mr. Dwyer sent an office associate, Mr. Leydon, to the Suffolk Superior Court with the sole mission of requesting a continuance of the case against Lindsey. Mr. Leydon went to the First Session of the Superior Court and noted that the case was not on the list for the day. The clerk informed him that the case had been continued on the preceding Friday.[2]

This information was erroneous. There had been some mix-up as to the trial list. The case in fact had not been postponed. Lindsey found himself in the Third Session on Monday, March 21, facing trial, and without counsel. When the case was called, the defendant asked the presiding judge for a continuance, telling him he needed a lawyer, and that a lawyer was supposed to have been there that morning to request a continuance on his behalf. The court refused a continuance, and a jury was impaneled forthwith, defendant being still without counsel.

Meanwhile Mr. Leydon, after having been informed that the case had been postponed, was advised that the case was in fact then proceeding to trial in the Third Session. He went at once to the Third Session and arrived there after the jury had been selected and sworn. He asked the trial justice for a continuance, pointing out that he knew nothing about the case, and that the Voluntary Defenders Committee needed some time for investigation and preparation before undertaking the defense. The trial justice told him that since the jury had been impaneled it was too late to have a continuance. There was a brief recess during which Mr. Leydon was given an opportunity to confer with the defendant. The case then proceeded to trial. Mr. Leydon, though inexperienced as a trial lawyer, and though not authorized by the Voluntary Defenders Committee to try the case, nevertheless in the emergency undertook to go through the motions of acting as defense counsel. It does not appear that any exceptions were taken during the trial, which resulted in a conviction. No appeal was taken from the judgment of conviction.

2. As to this, the single justice found as follows, in the writ of error proceeding: "On Monday morning Mr. Dwyer went to the Superior Court and found that the defendant's case or cases were not listed on the daily trial list. He thereupon left the court house, but asked Mr. Leydon, an associate on the staff of the Defenders Committee, to attempt to get a continuance. Mr. Leydon spoke to the clerk in the First Session and was told that the cases had been continued on Friday."

It will be well at this point to state the issue of constitutional right presented on the foregoing set of facts.

■ When petitioner Lindsey at the time of his arraignment on March 15 requested the court to appoint counsel for him, the refusal of the Commonwealth to supply him with counsel, this being a noncapital case, raised a Betts v. Brady question. See Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, and other cases cited by us in Melanson v. O'Brien, 1 Cir., 1951, 191 F.2d 963, 966–967. But this question passed out of the case, because on March 18 Lindsey found that he could obtain the services of an attorney from the Voluntary Defenders Committee and hence no longer needed or desired court-appointed counsel. As we explained in Melanson v. O'Brien, supra, an accused person has a fundamental right, implicit in the due process clause of the Fourteenth Amendment, to engage and be represented by counsel of his own choosing, in noncapital as well as in capital cases, with the corresponding obligation on the part of the state not to deprive the accused of the effective exercise of such right, by pressing the criminal proceeding to trial either without affording him a reasonable opportunity to secure such counsel or without affording counsel a reasonable time in which to consult with his client, investigate the case, secure witnesses, and otherwise map out a defense. Of course the accused's right in this respect is the same whether the attorney he has chosen or accepted is to be paid for his services or is offering his services to an indigent defendant as a public duty. It was the view of the court below that here the Commonwealth had not fulfilled its obligation, under the circumstances disclosed; that it had denied Lindsey procedural due process in hurrying him to trial on two serious charges, a few days after his indictment, without affording a reasonable opportunity to experienced trial counsel from the Voluntary Defenders Committee to investigate the case, interview witnesses, and prepare generally for trial. There seems to be no doubt that the trial justice was informed of the defendant's desire to be represented by an attorney from the Voluntary Defenders Committee, and of the willingness of that committee to assume the burden of defense if upon investigation the case appeared to be meritorious and if afforded sufficient time to work up the case.

The Commonwealth urges, however, that on this appeal we ought not to determine the merits of Lindsey's constitutional claim, in view of 28 U.S.C. § 2254, because Lindsey had failed, so it is said, to exhaust available state remedies whereby his constitutional claim might be adjudicated by the Supreme Judicial Court of Massachusetts, and from thence be taken to the Supreme Court of the United States on a writ of certiorari. This contention requires a further consideration of the writ of error proceeding mentioned above in the second paragraph of this opinion.

On January 30, 1951, Lindsey filed in the Supreme Judicial Court for the County of Suffolk his petition for a writ of error, alleging that his trial and conviction were in violation of his rights under the Fourteenth Amendment. There is no doubt that this petition, filed pursuant to the provisions of Ch. 250, Mass.G.L.(Ter. Ed.), was an appropriate procedure for obtaining a review by the Supreme Judicial Court of the judgment of conviction and a determination of the federal constitutional question sought to be presented. See Allen v. Commonwealth, 1949, 324 Mass. 558, 87 N.E.2d 192.

In accordance with established practice this petition for a writ of error came before a single justice of the Supreme Judicial Court. The single justice issued the writ, and a full hearing was held before him on the merits. So far as we can see, the findings of fact made by the single justice did not differ substantially from the findings made by the court below on the present petition for habeas corpus. However, the single justice ruled, on the basis of the foregoing facts, "that the defendant was not deprived of any constitutional rights. See Allen v. Commonwealth, 324 Mass. 558 [87 N.E.2d 192]; Commonwealth v. Blondin, 324 Mass. 564 [87 N.E. 2d 455]." That is all the single justice had

to say on the issue of constitutional right, though from the cases cited by him it may be inferred that he erroneously supposed he had a Betts v. Brady question before him. The single justice ordered that the judgments of conviction of Lindsey on the two indictments be affirmed.

Petitioner excepted to the ruling of the single justice, and a Substituted Bill of Exceptions was allowed by the single justice on September 29, 1952. On the same day petitioner filed an order for preparation of papers and copy for the full bench of the Supreme Judicial Court, and on October 1, 1952, he was advised by the clerk that the estimated cost of printing the record was $375.00. Under the normal procedure for review by the full bench of a writ of error proceeding before a single justice, as provided in Ch. 231, § 135, Mass.G.L.(Ter.Ed.), the moving party is required to prepay to the clerk the amount of the estimated cost of printing within twenty days after receipt of notice from the clerk of the estimated amount.[3] Upon receipt from the clerk of written notice that the papers are ready for transmission to the full bench, the moving party is required within five days to enter the case in the Supreme Judicial Court for the Commonwealth, which brings before the full bench a bill of exceptions to the rulings of the single justice.

On October 2, 1952 petitioner filed in the Supreme Judicial Court for the County of Suffolk, in the aforesaid writ of error proceeding before the single justice, a motion reciting that petitioner "is indigent and without funds to pay for the cost of printing the record and respectfully moves this Honorable Court to allow him to Proceed in Forma Pauperis to permit the case to be heard before the Full Court upon the original records on file." This motion Justice Lummus denied.

At this point counsel for Lindsey conceived that he was finally and effectively blocked from the possibility of any further review of his constitutional claim in the Massachusetts courts; also, that he could not apply to the Supreme Court of the United States for a writ of certiorari to review the ruling of the single justice. See Buchanan v. O'Brien, 1 Cir., 1950, 181 F.2d 601, 604–605; Gorman v. Washington University, 1942, 316 U.S. 98, 62 S.Ct. 962, 86 L.Ed. 1300. Therefore, he transferred the fight to the lower federal courts and instituted the habeas corpus proceeding now pending before us.

In this connection we reaffirm what we said in Buchanan v. O'Brien, supra, 181 F.2d at pages 605–606, as follows:

"If it were true that petitioner could not in any way obtain an adjudication of his claim by the full bench, because of his financial inability to bear the cost of preparing and printing the record, this would probably constitute a circumstance 'rendering such process [*i. e.*, a theoretical right to review by the full bench] ineffective to protect

---

3. It is possible that § 135 of Ch. 231 is intended to apply only to civil cases, and that it therefore does not prescribe the procedure on a petition under Ch. 250 for a writ of error to review a judgment of conviction in a criminal case. Mass. G.L., Ch. 278, § 33, is expressly applicable to criminal cases and provides that the record shall be prepared and printed at the expense of the Commonwealth; but § 33 applies only to cases arising in a superior court. In that view there would seem to be a *casus omissus* as between § 135 of Ch. 231 and § 33 of Ch. 278; that is, there would seem to be no statutory provision for printing the record in a writ of error proceeding in a criminal case coming up to the full bench of the Supreme Judicial Court from a single

justice thereof, and the matter would seem to be open to the Supreme Judicial Court to regulate by rule or otherwise. However, in the present case the clerk of the Supreme Judicial Court for the County of Suffolk evidently regarded § 135 of Ch. 231 as being applicable to the particular writ of error proceeding, for he acted in accordance therewith in sending notice to the petitioner of the estimated cost of printing the record. In the absence of a contrary ruling by the Supreme Judicial Court we make the same assumption as did the clerk, that § 135 of Ch. 231 prescribes the normal procedure for bringing up to the full bench for review a ruling of a single justice in a writ of error proceeding in a criminal case.

the rights of the prisoner' within the meaning of 28 U.S.C.A. § 2254. It may well be that the normal procedure of review by the full bench on a printed record of the proceeding before the single justice, as provided in Ch. 231, § 135, Mass.Gen.L.(Ter. Ed.), cannot be had without prepayment by the litigant to the clerk of the estimated cost of printing. But if in the writ of error proceeding Buchanan had applied to the Supreme Judicial Court for leave as a pauper to present his exceptions to the full bench on a typewritten record, or even on the original papers, it would be gratuitous for us to assume, in the absence of authoritative state precedent, that that court would have deemed itself so lacking in inherent power as to be helpless to afford a review in this manner to an indigent petitioner making a serious claim of unconstitutional deprivation of liberty. We are particularly unwilling to make any such assumption in view of the statutory definition of the august functions of the Supreme Judicial Court found in Ch. 211, § 3, Mass. Gen.L."

Until the Supreme Judicial Court tells us otherwise, we are still unwilling to assume that the full bench is so lacking in inherent power as to be helpless to afford a review on a typewritten record or on the original papers to an indigent petitioner in a writ of error proceeding in which a serious claim is made of deprivation of constitutional right in a criminal case. In Buchanan v. O'Brien, supra, we referred to Rule 1 of the Rules for the Regulation of Practice before the Full Court of the Supreme Judicial Court, providing for the transmission to the full court of a specified number of printed copies of the record, for review under § 135 of Ch. 231 "unless the court or a justice shall otherwise order." Subsequent to the publication of our opinion in Buchanan v. O'Brien, supra, which we have no doubt came to the attention of the Supreme Judicial Court, that court, in 1952, added to Rule 10 of its Full Court Rules the following sentence: "Where in

these rules there is a reference to printing, the record may be prepared in such other manner as may be ordered by the full court or a justice." This, we take it, was designed to make abundantly clear that the full court was prepared to dispense with the requirement of printing by special order in meritorious cases.

However that may be, petitioner urges that he filed a motion requesting the full bench to review the ruling of the single justice upon the original records on file, and that it was beyond the control of the petitioner that "the full bench saw fit to have this motion heard and disposed of by a single justice".

But we think that this is not an accurate statement of what happened. The motion for leave to proceed on the original papers was filed in the office of the clerk of the Supreme Judicial Court for Suffolk County, in the writ of error proceeding pending before a single justice. There is an office of clerk of the Supreme Judicial Court for Suffolk County, and a wholly separate and distinct office of clerk of the Supreme Judicial Court for the Commonwealth. See §§ 1 and 3 of Ch. 221, Mass.G.L. The application was therefore addressed to the single justice only, not to the full court, which was proper enough, since the single justice, as well as the full court, is empowered under Rule 10 of the Full Court Rules to order that the record be prepared in some manner other than printing. However, when the single justice denied petitioner's application for leave to proceed before the full bench on the original papers, petitioner had not exhausted his available remedies, for he still could have addressed a similar application to the full court. This he could have done, we suppose, in a letter addressed to the Chief Justice of the Supreme Judicial Court or, better still, by filing in the office of the clerk of the Supreme Judicial Court for the Commonwealth an application to the full court for permission to be heard on the original papers. We have no reason to suppose that petitioner's motion to be heard on the original papers, dispensing with the cost of printing, ever came to the attention of the full court.

So far as we can see, it may still be possible for petitioner to get his review in the Supreme Judicial Court. As above stated, his Substituted Bill of Exceptions was allowed by the single justice on September 29, 1952, but this Bill of Exceptions has never been entered in the Supreme Judicial Court for the Commonwealth. Section 11, as amended, of Ch. 211, Mass.G.L., provides in part as follows:

"If, by mistake or accident or other sufficient cause, an appeal from any court to the full court or a bill of exceptions or report which has been allowed by any court is not duly entered in the full court, that court, upon petition filed within one year after the appeal, bill of exceptions or report should have been entered, and upon terms, may allow the appellant to enter his appeal or the excepting party to enter his bill of exceptions or the proper party to enter the report."

If the financial inability of petitioner to pay the cost of printing, and the misapprehension of his counsel as to the finality of the action of the single justice in denying the motion to be allowed to proceed on the original papers, may be deemed "other sufficient cause" for the bill of exceptions not being duly entered in the full court, then it would seem that the Supreme Judicial Court might even now bring the case before it for review, by an order under § 11 of Ch. 211 in conjunction with a special order under its Rule 10 dispensing with the printing of the record. We suppose that court would not take such action unless the case seemed prima facie to have merit; but whatever might be the determination as to the validity of petitioner's constitutional claim, it can hardly be characterized as a frivolous one.

If we are right in the foregoing, then before a lower federal court should undertake to determine whether a state court conviction is void under the federal Constitution, it is obviously more appropriate that the highest court of the state be given an opportunity to rule on the claim of denial of due process alleged to have occurred in the course of the state's administration of criminal justice. If the Supreme Judicial Court should rule in petitioner's favor, then it would be the state that afforded corrective process in vindication of a claim of constitutional right. If the Supreme Judicial Court should rule adversely to petitioner's constitutional claim, then the Supreme Court of the United States would have an opportunity, upon a writ of certiorari, to reverse the state court judgment. See Darr v. Burford, 1950, 339 U.S. 200, 216–217, 70 S.Ct. 587, 94 L.Ed. 761.

█ That brings us to the disposition we should make of this case, in its present posture. We do not think that we ought to vacate the order of the district court and direct that court to dismiss the habeas corpus proceeding without prejudice, on the ground that the petitioner had not exhausted the effective remedies available to him in the courts of the state. That course would be wasteful and unjust in setting at naught the habeas corpus proceeding in which petitioner has prevailed in the court below, if it should turn out that we were mistaken in supposing that there was an available procedure whereby an indigent petitioner could obtain review in the Supreme Judicial Court of an adverse ruling of the single justice in the writ of error proceeding without having to meet the impossible condition of advancing several hundred dollars for the printing of the record.

Accordingly, we shall enter an order retaining the present appeal on our docket without disposition, until further order of the court, with the suggestion to appellee that he proceed forthwith in the state courts in an effort to have his Bill of Exceptions to the ruling of the single justice entered and heard in the Supreme Judicial Court for the Commonwealth.