FREDERICK LINDSEY *vs.* COMMONWEALTH.

Suffolk.    November 2, 1953. — January 4, 1954.

Present: QUA, C.J., WILKINS, SPALDING, & COUNIHAN, JJ.

*Constitutional Law*, Due process of law, Assistance of counsel. *Practice, Criminal,* Continuance, Assistance of counsel. *Supreme Judicial Court,* Findings of fact.

In a proceeding on a writ of error it is not the province of the full court to make findings of fact in addition to those made by the single justice even though such additional findings are warranted by the evidence in the record. [3]

A defendant indicted for serious offences was not afforded due process of law where it appeared that promptly after his indictment he on a Friday procured counsel at least to secure a continuance for a proper preparation of the defence of the case, which had been assigned for trial on the following Monday morning; that because of the fact that the case was not on the daily trial list on Monday morning and of incorrect information then given by the clerk that it had been continued, and without fault of the defendant or counsel, the defendant was not represented by counsel at the opening of court that morning, when a continuance might have been granted; that shortly thereafter counsel's associate, upon being informed that the case was on trial, found that the jury was already empanelled and was told by the judge that it was then too late for a continuance; and that the trial proceeded to verdicts of guilty after only a short conference between the defendant and the associate and with the defendant having only such assistance as could be given by the associate, who knew virtually nothing about the case. [4–5]

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on January 30, 1951, for a writ of error to reverse sentences imposed on the petitioner in the Superior Court.

Following the issuance of the writ and a return and a plea the case was heard by *Williams*, J., who ordered the judgments of the Superior Court affirmed. The petitioner alleged exceptions.

*Wilbur G. Hollingsworth*, for the petitioner.

*Arnold H. Salisbury*, Assistant Attorney General, for the Commonwealth.

QUA, C.J. The petitioner sued out his writ of error to reverse two concurrent sentences of seven to nine years in the State prison imposed upon him simultaneously in the Superior Court for the offences respectively of incest and of carnal knowledge of a female child under the age of sixteen. The extreme penalties for these crimes are respectively twenty years and life imprisonment. G. L. (Ter. Ed.) c. 272, § 17; c. 265, § 23.

One of the petitioner's contentions is that he was denied due process of law under the Fourteenth Amendment to the Constitution of the United States by reason of the fact that although, as he says, he had procured counsel, he was deprived of the assistance of that counsel in court.

The right to the assistance of counsel obtained by the accused is, of course, one of the rights secured by the Fourteenth Amendment. *Powell* v. *Alabama*, 287 U. S. 45, 68–69. Although the State is not in all cases required to furnish counsel it is required to allow the accused a reasonable opportunity to procure counsel for himself and to allow such counsel a reasonable opportunity to prepare and to present the defence. *Allen* v. *Commonwealth*, 324 Mass. 558. *Commonwealth* v. *Blondin*, 324 Mass. 564, 567–569. *Avery* v. *Alabama*, 308 U. S. 444, 446. *House* v. *Mayo*, 324 U. S. 42, 45–46. *White* v. *Ragen*, 324 U. S. 760, 763–764.

Bearing upon this point, the following facts appear, either as matter of record or from findings of the single justice. The petitioner was arrested on March 1, 1949.

From March 3 or 4 he was in custody at Charles Street jail in Boston until March 21, the day of his trial. On March 15 he was indicted and arraigned and pleaded not guilty to both indictments. The cases were on the daily trial list for Friday, March 18, and late in the afternoon they were sent out from the first session, in which the trial list is called, to the third session for trial; but the trial did not begin that day. It did not appear that the petitioner knew that the cases had been sent out. Later that afternoon at the jail the petitioner consulted with Mr. Dwyer, an attorney representing the Voluntary Defenders Committee. The petitioner told Mr. Dwyer that his cases would be reached for trial on the following Monday, and Mr. Dwyer told him that he would attempt to get a continuance. On Monday morning Mr. Dwyer went to the Superior Court and found that the cases were not listed on the daily trial list. He thereupon left the court house, but asked Mr. Leydon, an associate on the staff of the Voluntary Defenders Committee, to attempt to get a continuance. Mr. Leydon was told by the clerk in the first session that the cases had been continued on Friday. This was not the fact. There is no reason, however, to believe that the clerk intended to make a false statement. Shortly thereafter Mr. Leydon was advised that the cases were then proceeding to trial in the third session. Upon going there he found that a jury had already been empanelled. He spoke to the judge and was allowed a short time to confer with the petitioner. The judge told him that "as the jury had been impaneled it was too late to have a continuance." The trial went on. Mr. Leydon cross-examined the government's witnesses and argued to the jury. Verdicts of guilty were returned.

Evidence set forth in the bill of exceptions would have warranted the finding of some additional details favorable to the petitioner, but it is not the province of the full bench in a proceeding at law to find facts from the evidence. *Atlantic Maritime Co.* v. *Gloucester*, 228 Mass. 519, 522. *Maybury Shoe Co.* v. *Izenstatt*, 320 Mass. 397, 402. *Tardiff, petitioner*, 328 Mass. 265, 267. The single justice may not

have been convinced of the correctness of the evidence beyond the findings he made.

But in our opinion the findings made show that the petitioner had succeeded in procuring the services of a lawyer, and because of the course of events and without fault on his part or on the part of any lawyer representing him he was deprived of those services at the time when he most needed them. Mr. Leydon was not engaged to try the cases. He had nothing whatever to do with the cases until the morning of the trial. He undertook no more than to seek to procure a continuance of cases that were not on the list for the day. He did not even see the petitioner until after the cases were on trial. He could have made no preparation to try them. When he discovered unexpectedly that the cases were on trial, that the trial could not be stopped, and that the petitioner was without a lawyer he did what he could rather than desert the petitioner entirely. This was not the kind of legal services to which the petitioner, if he had a lawyer, was entitled under the Fourteenth Amendment or under art. 12 of the Declaration of Rights.

But it may be urged that the single justice did not go quite so far as to find that Mr. Dwyer had committed himself or the Voluntary Defenders Committee to a complete defence of the cases. Possibly the evidence would not have warranted such a finding.[1] Nevertheless, it is clear that Mr. Dwyer did commit himself to the duty of at least seeking the continuance necessary for a proper investigation of the cases. The petitioner had a right to be represented by his attorney in that matter as in all matters for which he had engaged an attorney. Because of the unfortunate mistake of the clerk and of the position taken by the presiding judge that it was too late for a continuance after

---

[1] The question of alleged violation of the constitutional rights of the petitioner has been under consideration on a petition for habeas corpus in the Federal courts. *O'Brien* v. *Lindsey*, 204 Fed. (2d) 359. It would seem that the evidence there adduced must have been considerably more favorable to the petitioner than that adduced before the single justice of this court not only in the matter just mentioned above but in other particulars as well.

the jury had been empanelled the petitioner was deprived of seasonable representation in the matter of a continuance. Ordinarily this might not be of great importance. In the present cases it was of substantial importance. The moment of the opening of court on the morning of Monday, March 21, before the jury were empanelled seems to have been the crucial moment when a continuance might have been granted, if the petitioner had been properly represented by counsel. The denial of a continuance led to the petitioner being tried then and there for two serious offences with only the assistance of a lawyer who could know almost nothing about the cases and who had had no reasonable opportunity to prepare them.

The ground of this decision is not that the Commonwealth could not try the petitioner without providing counsel for him. That was the kind of question presented in *Betts* v. *Brady*, 316 U. S. 455, and in the many other cases in which that case has been followed or distinguished. See cases cited in *Allen* v. *Commonwealth*, 324 Mass. 558, at page 562. The ground of this decision is that the petitioner was deprived of due process of law because an unfortunate combination of circumstances prevented him from having the benefit on an important occasion of the services of counsel whom he himself had secured within three days of his indictment to represent him on that occasion. See *O'Brien* v. *Lindsey*, 204 Fed. (2d) 359, 362.

The exceptions are sustained, and judgment is to be entered on the writ of error reversing both sentences, with costs to the petitioner to be paid by the county of Suffolk.

*So ordered.*