## MELANSON v. O'BRIEN.
### Civ. No. 51–4.

United States District Court
D. Massachusetts.
June 4, 1952.

Joseph J. Gottlieb, Boston, Mass., for petitioner.

Francis E. Kelly, Atty. Gen., Henry P. Fielding, Asst. Atty. Gen., Stephen A. Moynahan, Dist. Atty. for Western Dist. of Springfield, Mass., for respondent.

SWEENEY, Chief Judge.

Pursuant to the order of the United States Court of Appeals for the First Circuit, 191 F.2d 963, the application of this petitioner for a writ of habeas corpus has been granted and a hearing has been held to determine whether the petitioner should be discharged from the custody of the warden of the Massachusetts State Prison. The petitioner with his two co-defendants in his original trial were present at the hearing on the writ. They all testified, and other evidence was received from other persons. The petitioner bases his application for the writ upon the ground that his constitutional rights were violated in two ways; first that his trial was conducted "in camera" and in the absence of his friends and relatives, and secondly that his rights under the Fourteenth Amendment to the Constitution were violated in that he was forced to go to trial without counsel. Neither of these contentions is supported by the evidence.

### Findings of Fact.

This petitioner, 31 years old at the time, was arrested on the night of January 3, 1946 with two other men on a charge of having with force and violence raped a 15-year old girl. The trio were lodged in the Berkshire County jail and remained there until after trial in Superior Court on January 22d. On the morning of January 4th he and his co-defendants appeared in the Pittsfield District Court where they were arraigned and they pleaded not guilty. The case was continued for one week. I find that during the ensuing week the petitioner had full opportunity to secure the services of an attorney if he desired one to conduct his hearings before the District Court. In fact I find that his associates received a visit from an attorney by the name of Herbits on January 4 and again on January 7. I think it is a fair assumption that had Melanson wanted to talk to Herbits he could have done so. The petitioner was not bound to secure an attorney if he did not want to because there was a possibility that the District Court, which was without authority to try the defendants for the offense of rape, might not hold him for the Grand Jury but discharge him from custody. On January 11 he appeared in the Pittsfield District Court where charges against him were heard and he was then bound over to the Grand Jury. In spite of the allegation in his petition that he was "without any previous record, experience with law or court procedures", I find that prior to January 11 this petitioner had on three occasions conducted his own defense in that same Pittsfield District Court, twice on a charge of drunkenness and once on a charge of larceny. He had ample opportunity between January 11 and January 16 to secure counsel if he so desired before his case was presented to the Grand Jury. He was not bound to do so, for again he might rely upon the fact that

the Grand Jury might not return an indictment against him. Contrary to the allegations in the petition, I find that at no time was this petitioner held incommunicado, but on the contrary received visits from his wife on at least 5 occasions during the 18-day period.

On January 16 the petitioner was taken to the Superior Court where the Grand Jury returned an indictment against him and his two co-defendants. During the week preceding the return of the indictment, Melanson had been visited by his wife on three occasions and at no time did he make any inquiry about an attorney. He now states that he expected that an attorney with whom he had consulted would appear at his trial. If he does have such a belief at this time, I cannot find that it is well grounded but on the contrary is something that has been of recent manufacture.

This petitioner some time between January 4 and January 22, and probably between the dates of January 9 and 15, received a visit from an attorney by the name of Aaronson. Aaronson's visit with the petitioner was brought about in the following manner: After the petitioner had been first arraigned in the District Court his wife wrote about her husband's predicament to his mother in Wyoming. The mother immediately telegraphed to the wife and in return received another telegram, and after that notified the wife that she would be financially responsible for the employment of an attorney for her son. The wife relayed this information to the petitioner. She then consulted with an attorney by the name of Charles Faulkner who refused to take the case. Faulkner did, however, get in touch with attorney Aaronson and suggested that Aaronson visit Melanson in the Berkshire County jail. The sequence of these events is rather well fixed, for the petitioner's wife states emphatically that she did not go to see Faulkner until after she had received the assurance of the mother's financial aid because there was no sense in her going without such assurance as she had no money to employ an attorney. Thereafter Aaronson appeared at the jail and talked with the petitioner and after some discussion asked Melanson pointedly whether or not he had money with which the attorney could undertake his defense. Melanson said that he had no money. Since Melanson already knew that his mother had agreed to be responsible for his defense, his denial of funds was tantamount to the refusal of Aaronson's offer of defense. He may not have been willing to employ Aaronson as an individual, but this finding nullifies any claim on his part to a sincere belief that he expected Aaronson to appear at his trial in the Superior Court. Thereafter Aaronson left the jail and told Melanson that he would report what had transpired back to Faulkner. He stated that Faulkner might get in touch with him. In the light of the above circumstances I feel that by this time Melanson had elected to proceed without counsel, or at least without counsel which came to visit him as a result of his wife's and mother's efforts. I find as a fact that he never again sought counsel to appear in his defense, neither Faulkner, Aaronson nor any one else.

On January 22d when this petitioner and his two associates were brought into the courtroom, they appointed Melanson as their spokesman and he on behalf of the trio indicated that he wanted to talk with the district attorney. The district attorney approached the bench where the petitioner and his associates were seated and asked them what they wanted. Melanson said, "We would like a little more time to talk to this lawyer". I do not accept this statement as the equivalent of a statement that he wanted to be represented by counsel. It was clearly overheard by Assistant District Attorney Cote, who testified before this Court. The district attorney told the petitioner and his associates that he could not grant them further delay because it was his duty to try the jail cases ahead of those cases which were on bail, and that they had had ample opportunity to talk to and secure an attorney. Nothing further was said by this petitioner or his associates. Thereafter the district attorney moved for the trial of Commonwealth v. Blondin et als. Before empaneling the

jury Judge Sullivan asked these men if they had counsel and the reply was that they had not, that they had no funds to hire counsel, and would proceed without counsel.

I do not find that the allegations of the petition are borne out by the evidence. I find that this petitioner never used the word continuance in his conversation with the district attorney and did not ask for an opportunity to hire a lawyer to defend him. The most that he stated was that he wanted to "talk to this lawyer". This finding is entirely consistent with the conversation that ensued between Judge Sullivan and these defendants. Judge Sullivan asked them if they had counsel and Melanson speaking for himself and associates said that they had not, that "they could not afford it and they would represent themselves".

I think that these findings bring this case clearly within the Betts v. Brady rule, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. The Court of Appeals in its decision of October 26, 1951 referred to the defendant's feeling of inadequacy at proceeding to trial without an attorney. There is absolutely no evidence that Melanson was apprehensive about being tried without an attorney, and the evidence is just to the contrary. Melanson in his testimony and manner showed every bit of confidence in himself. This Court is convinced that Melanson elected to go to trial without counsel, knowing what he was doing, and it was only after a severe sentence was imposed upon him that he made efforts to and did secure adequate counsel.

With respect to the trial being in camera, I find that the wife of this defendant did appear in the Superior Courtroom on the morning of his trial and that she would, if called, have testified in his behalf. She remained outside of the courtroom but was not called by either party, nor did Melanson indicate nor did she indicate that she was a potential witness. There is nothing unusual in excluding witnesses from a courtroom. It is customarily done in sex cases. In fact it is also done so that the witnesses may not hear each other testify and possibly be led into adopting testimony they otherwise would not have given. As Melanson had previously conducted defense of himself in court without a lawyer, he must have known that a simple statement that he wanted his wife to testify would have brought her into the courtroom to testify. I think that this claim is also a recently contrived claim. I find that the courtroom was cleared of all persons having no direct interest in the case in accordance with the controlling statute, General Laws, Chap. 278, Section 16A, but I cannot find that the wife of this petitioner was prevented from testifying in his behalf.

The evidence presented before me, which was at great variance from the allegations of the petition, does not disclose that any advantage was taken of this petitioner. The picture presented is not that of a bewildered and inadequate young man being forced unreasonably to trial. It rather presents the picture of a self-assured mature man of 31 calculatingly aware of his predicament but nevertheless willing to proceed to trial without a lawyer in spite of the fact that his mother had offered to provide counsel for him.

## Conclusions of Law.

From the foregoing I conclude and rule that the constitutional rights of the petitioner were not invaded either by trying his case without an attorney on January 22 or by a hearing in camera as conducted. The writ is discharged and the petitioner is remanded to the custody of the warden of the Massachusetts State Prison.