**MELANSON v. O'BRIEN, Warden.**

**No. 4685.**

United States Court of Appeals
First Circuit.

April 27, 1953.

Lawrence E. Cooke, Boston, Mass., for appellant.

Stephen A. Moynahan, Dist. Atty., Western District, Springfield, Mass. (Francis E. Kelly, Atty. Gen., and Henry P. Fielding, Asst. Atty. Gen., both of Boston, Mass., and Walter J. Griffin, Holyoke, Mass. and Frank W. Cimini, Asst. Dist. Atty., Pittsfield, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Appellant Melanson, with two codefendants, was tried and convicted in the Superior Court for Berkshire County, Massachusetts, upon an indictment in two counts charging the crimes of rape and carnal abuse of a female child. As a result he is now confined in Massachusetts State Prison

under concurrent sentences of 25 to 30 years.

Claiming that he was tried and convicted without the assistance of counsel, in violation of his rights under the Fourteenth Amendment, Melanson unsuccessfully sought relief in the state courts (1) in a motion for a new trial filed in the Superior Court and in exceptions to the denial thereof taken to the Supreme Judicial Court, and (2) in a petition for a writ of error filed in the Supreme Judicial Court for Suffolk County. In Commonwealth v. Blondin, 1949, 324 Mass. 564, 87 N.E.2d 455, the Supreme Judicial Court overruled appellant's exceptions to the order denying a new trial, and at the same time, on the petition for a writ of error, affirmed the judgment of conviction. Certiorari was applied for and denied. Melanson v. Massachusetts, 1950, 339 U.S. 984, 70 S.Ct. 1004, 94 L.Ed. 1387.

Thereafter, Melanson filed in the court below a petition for a writ of habeas corpus. The district court entered an order dismissing the petition and denying the writ, on the ground that it appeared from the face of the petition that Melanson was not entitled to the relief sought. Appeal from that order was taken to this court. Our conclusion was that, on the allegations of the petition, Melanson had been denied procedural due process in contravention of the Fourteenth Amendment. Accordingly we reversed the order of the district court and remanded the case for further proceedings. Melanson v. O'Brien, 1 Cir., 1951, 191 F.2d 963.

As we understood the petition, Melanson did not seek to raise a Betts v. Brady, infra, question, based upon the failure of the Commonwealth to supply counsel to an indigent accused person in a noncapital case. See Betts v. Brady, 1942, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, and other cases cited in 191 F.2d at pages 966–967. According to the allegations, Melanson at no time desired to have counsel assigned by the Superior Court. He desired to be represented by counsel selected and paid by himself. He had available funds to employ counsel, but claimed that he was not afforded adequate opportunity to secure the services of a lawyer until after his trial and conviction.

Melanson was arrested on the evening of January 3, 1946, and on the next day was brought before the District Court of Central Berkshire, which court ordered him held in $1,000 bail. On January 11 he was bound over for the grand jury and his bail was raised to $5,000. On January 16 the grand jury indicted him and his two codefendants. On the same day he was arraigned and pleaded not guilty. The Superior Court set bail at $50,000 and he was forthwith remanded to custody.

The petition alleged that Melanson, with ample funds immediately available wherewith to employ counsel, had prior to his arraignment conferred at the county jail with a lawyer from Pittsfield. However, on January 22, just before the trial started, and only six days after he had been indicted, he found himself in the prisoner's dock in the courtroom, without an attorney to represent him, the attorney from Pittsfield having failed to come back to see him or to communicate with him further, leaving petitioner in ignorance whether this lawyer would accept the case or not. It was further alleged that petitioner then spoke to the district attorney in the courtroom, telling him of his previous unsuccessful efforts to engage counsel and asking the prosecutor to have the case continued so that petitioner might have more time and opportunity to obtain counsel for himself. The district attorney, so it was alleged, replied that the case could not be postponed; and then asked the court for the immediate trial of the case, without disclosing to the court the defendant's desire to be represented by counsel and his request for a continuance, whereupon the court ordered the trial to proceed forthwith. It was alleged that petitioner, with no more than six grades of grammar schooling, with no previous record and no experience whatsoever with courts and legal proceedings, was misled into supposing that the prosecutor's word was final in the denial of the requested postponement, and did not know enough to inform the court directly of his desire to be represented by counsel of his own choosing;

that he did not, therefore, ask the court for a continuance, but suffered the trial to proceed; that throughout the trial he was prejudiced by his incompetence to organize and present his own defense properly.

An accused person has a fundamental right, implicit in the due process clause of the Fourteenth Amendment, to engage and be represented by counsel of his own choosing, in noncapital as well as in capital cases. There is a corresponding obligation on the part of the state not to deprive the accused of the effective exercise of such right, by pressing the criminal proceeding either without affording him a reasonable opportunity to secure such counsel or without affording counsel a reasonable time in which to consult with his client, investigate the case, secure witnesses, and otherwise map out the defense. If the allegations of the present petition were true, it would have to be concluded that the Commonwealth had failed to meet that obligation.

But as not infrequently happens in these habeas corpus cases, when Melanson's allegations were, upon remand, submitted to the test of proof in the district court, the case took on quite a different aspect.

There was evidence, which the district judge believed, that shortly after Melanson's arrest his wife telegraphed his mother in Wyoming informing her of her son's predicament, and that the mother promptly replied that she would be financially responsible for the employment of an attorney for her son. This information the wife conveyed to petitioner. The wife then consulted a lawyer named Faulkner, who declined to take the case, but who did get in touch with another lawyer, Aaronson by name, suggesting that he visit Melanson in the county jail.

Attorney Aaronson went to see Melanson, probably some day between January 9 and 15, which was prior to the indictment. There was some conflict of testimony as to what took place between Aaronson and petitioner at this interview. The district judge credited Aaronson's version. According to Aaronson, he introduced himself as having come at the suggestion of Faulkner, who had declined to take the case. He stated to Melanson that he was facing a very serious charge, "and I asked him whether he had sufficient funds to retain counsel and prepare for a defense and my recollection was that he said no"; that that was about all there was to the conversation, which lasted no more than two minutes; that he did not tell Melanson he would be back to see him, but merely that he would report the conversation to Mr. Faulkner, "and he might hear from Mr. Faulkner."

In the light of this testimony, the district judge concluded that since "Melanson already knew that his mother had agreed to be responsible for his defense, his denial of funds was tantamount to the refusal of Aaronson's offer of defense. He may not have been willing to employ Aaronson as an individual, but this finding nullifies any claim on his part to a sincere belief that he expected Aaronson to appear at his trial in the Superior Court." Further, the district judge found that during the week preceding the return of the indictment, "Melanson had been visited by his wife on three occasions and at no time did he make any inquiry about an attorney. He now states that he expected that an attorney with whom he had consulted would appear at his trial. If he does have such a belief at this time, I cannot find that it is well grounded but on the contrary is something that has been of recent manufacture." In the light of the foregoing, the district judge inferred that by that time "Melanson had elected to proceed without counsel or at least without counsel which came to visit him as a result of his wife's and mother's efforts. I find as a fact that he never again sought counsel to appear in his defense, neither Faulkner, Aaronson nor anyone else."

When it came to the events in the courtroom, prior to the start of the trial, on January 22, Melanson's testimony was contradicted at important points by witnesses for the Commonwealth, whom the district judge believed. There is no doubt that Melanson had some conversation with the district attorney. But the district judge did not find, as alleged in the petition, that Melanson specifically requested a continuance in order to be afforded an opportunity to engage a lawyer. All that Melanson said was, according to the findings, that "We

would like a little more time to talk to this lawyer", which the district judge did not accept "as the equivalent of a statement that he wanted to be represented by counsel." It was found that the district attorney told petitioner and his associates, in reply, "that he could not grant them further delay because it was his duty to try the jail cases ahead of those cases which were on bail, and that they had ample opportunity to talk to and secure an attorney."

On the previous appeal we noted the following as substantially strengthening petitioner's case, 191 F.2d at page 968:

"It does not appear from an examination of the transcript of the trial that the court ever asked the defendant whether he had counsel or desired to be represented by counsel. If the prosecutor had made known to the court the accused's request for a postponement in order to secure counsel, it could hardly be doubted that the court would under the circumstances have granted a continuance at least for a few days. But due to the action of the prosecutor the accused's request for postponement never even came to the attention of the court."

But the trial transcript, which appears as an exhibit, only purports to record what transpired after the jury was impaneled. At the hearing below in the district court, several witnesses for the Commonwealth, whom the district judge believed, testified that *before* impaneling the jury the trial judge asked the defendants if they were represented by counsel, and that Melanson, acting as spokesman for the group, replied that they were not, that they had no funds to employ counsel; that they would represent themselves; that he (Melanson) "could handle the case." Assuming, as we must, that this exchange took place, why did Melanson falsely tell the trial judge that he had no funds to employ counsel and would handle the case *pro se*, if, as he claimed in the petition, he not only had available funds but wanted a reasonable delay to enable him to procure counsel of his own choosing? Why did he not tell that to the judge when the opportunity was thus opened up to him?

Contrary to the allegation of the petition that Melanson had no previous criminal record and no experience with courts and legal proceedings, it was proved that he had been brought before the District Court of Central Berkshire on four separate occasions, once on a charge of assault and battery, as to which he pleaded guilty, twice on a charge of drunkenness, to which he pleaded guilty both times, and once on a charge of larceny, as to which he pleaded not guilty and represented himself at the trial which resulted in a finding of guilty. Further, the district court found: "There is absolutely no evidence that Melanson was apprehensive about being tried without an attorney, and the evidence is just to the contrary. Melanson in his testimony and manner showed every bit of confidence in himself. This Court is convinced that Melanson elected to go to trial without counsel, knowing what he was doing, and it was only after a severe sentence was imposed upon him that he made efforts to and did secure adequate counsel." [105 F.Supp. 529]

We accept the essential findings of fact of the district court, since we cannot say on the record that they are clearly erroneous, depending as they do, for the most part, upon questions of credibility of witnesses. As the facts now appear, we cannot conclude that the Commonwealth denied Melanson procedural due process of law, as alleged in the petition, by denying him a reasonable opportunity to obtain counsel of his choice before putting him on trial. These habeas corpus proceedings in the lower federal courts, in which a state's judicial processes are in effect under review and scrutiny, involve the exercise of a very delicate jurisdiction which cannot be avoided, because Congress has put it upon us, but which calls for the utmost circumspection. The case would have to be much stronger, the violation of federal constitutional right much clearer, to warrant this court in nullifying a judgment of conviction in a state court, in the face of the contrary findings and conclusion of the district court.

Appellant insists upon another point, which he raised upon the previous appeal, namely, that he was denied procedural due

process by being tried in camera, behind closed doors. On this aspect of the case, no significant new facts appear in the present record to make us revise the conclusion we reached on the previous appeal. We rest on what we said in 191 F.2d at 965 in disposing of this contention.

Melanson did undertake to show that when the trial judge ordered the courtroom cleared, pursuant to Mass.Gen. Laws (Ter. Ed.) c. 278, § 16A, one of the persons excluded from the courtroom was Mrs. Melanson, the wife of petitioner; that she was prepared to testify on Melanson's behalf; that she tried to get back in and was unable to do so.

Of course if the Commonwealth prevented Melanson from calling a material witness on his own behalf, it thereby deprived him of procedural due process, contrary to the Fourteenth Amendment. There is no question as to that. But if this is the claim which petitioner seeks to advance, it is not merely a phase of the trial-in-camera point, but is a substantive and independent claim of denial of constitutional right, which so far as appears Melanson has never presented to the state courts. The claim would, therefore, seem not to be open for adjudication in a federal court on an application for a writ of habeas corpus. 28 U.S.C. § 2254.

■ But if we are mistaken in this, we think it proper to add that the claim does not appear to us to be meritorious. We gather that when the court official executed the trial judge's order to clear the courtroom, Mrs. Melanson was sitting among the spectators and that she never made known to the court officer her identity or her legitimate interest, as wife of one of the defendants, in remaining for the trial. The district judge found " * * * that the wife of this defendant did appear in the Superior Courtroom on the morning of his trial and that she would, if called, have testified on his behalf. She remained outside the courtroom but was not called by either party, nor did Melanson indicate nor did she indicate that she was a potential witness. * * * As Melanson had previously conducted defense of himself in court without a lawyer, he must have known that a simple statement that he wanted his wife to testify

would have brought her into the courtroom to testify. I think that this claim is also a recently contrived claim. I find that the courtroom was cleared of all persons having no direct interest in the case in accordance with the controlling statute, General Laws, Chap. 278, § 16A, but I cannot find that the wife of this petitioner was prevented from testifying in his behalf."

The judgment of the District Court is affirmed.