**Devandlis WIGGINS, Petitioner,**

v.

**Joseph E. RAGEN, Warden, Illinois State Penitentiary, Respondent.**

**No. 12110.**

United States Court of Appeals Seventh Circuit.

Feb. 6, 1958.

Rehearing Denied March 21, 1958.

Edward R. Lev, Chicago, Ill., for appellant.

Latham Castle, Atty. Gen., Theodore G. Maheras, Asst. Atty. Gen., for appellee.

William C. Wines, Raymond S. Sarnow, A. Zola Groves, Asst. Attys. Gen., of counsel.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

HASTINGS, Circuit Judge.

On a prior appeal to this court from an order of the district court dismissing a petition for writ of habeas corpus without a hearing, this cause was remanded for a hearing. After the parties were heard, the district court again dismissed the petition and denied the issuance of a certificate of probable cause. Subsequently, on August 5, 1957, on appellant's petition, a certificate of probable cause was entered by our order and leave was granted to prosecute this present appeal *in forma pauperis*. Counsel appointed by this court has represented petitioner throughout this extended proceeding.

A statement of the procedural background of this matter seems necessary. On January 10, 1951, Devandlis Wiggins, petitioner, was apprehended and charged in several indictments with the crime of armed robbery, to which he pleaded guilty on March 27, 1951. He was sentenced by the state court to serve not less than 60 years nor more than life imprisonment in the Illinois penitentiary, where he is now confined. In 1954, petitioner filed in the court of conviction a petition under the Post-Conviction Hearing Act of Illinois, Ill.Rev.Stat., 1955, Ch. 38, §§ 826–832, which was denied on December 22, 1954. This order was affirmed upon writ of error to the Supreme Court of Illinois. Petition for certiorari was denied by the Supreme Court of the United States on January 10, 1956. Wiggins v. People of State of Illinois, 350 U.S. 940, 76 S.Ct. 314, 100 L.Ed. 820. On January 26, 1956, petitioner filed in the district court of the United States his petition for a writ of habeas corpus, which that court, without a hearing, held to be insufficient and denied.

On October 25, 1956, we held that the district court erred in dismissing the petition without a hearing and remanded with instructions to hold such hearing because "the recitals in the petition and its exhibits present averments of fact, prima facie, requiring a hearing to determine whether special circumstances existed, within the meaning of the Supreme Court's announcements." Wiggins v. Ragen, 7 Cir., 1956, 238 F.2d 309, 312. The petition averred, among other things, that petitioner was indigent; that he had been denied continuances to secure counsel of his own choice; that the Public Defender appointed as his counsel was hostile toward him; that he was an unaided, uneducated prisoner, in jail, seeking counsel of his own choice, and that he had finally entered a despairing plea of guilty to the charges against him.

On November 29, 1956, in a separate opinion denying respondent's petition for a rehearing we explained that we had not departed from our previous decisions in United States ex rel. O'Connell v. Ragen, 7 Cir., 1954, 212 F.2d 272 and United States ex rel. Gawron v. Ragen, 7 Cir., 1954, 211 F.2d 902, both of which reasserted the rule that when the merits of an application for habeas corpus in the district court had been previously passed upon by the state courts, including the highest court of the state, the federal court should ordinarily decline the writ even without holding a hearing. Wiggins v. Ragen, supra, 238 F.2d at page 313. The court, in this opinion by one of our most eminent former colleagues, the late Judge Walter C. Lindley, went on to set out of the factor distinguishing this case from the general rule and to define the function of the district court in these words:

"* * * the ground of our decision lay in the narrow point which sometimes appears in applications for writs of habeas corpus by state convicts, namely, the question was presented of whether the circumstances, under the averments of the petition, were so unusual that the

trial court may have violated petitioner's rights when it refused to grant further continuances or to permit petitioner to make further effort to obtain counsel of his own choice, or when it appointed counsel who did not want to serve and is alleged to have been hostile to petitioner. It seemed to us that, under the petitioner's averments, the circumstances were such that the court, having jurisdiction of the application, should have conducted a hearing and determined for itself whether petitioner's constitutional rights had been violated at the time of the trial. It may well be that, after hearing, the district court will be of the opinion that the state court's decision upon this point is entirely convincing. On the other hand, it may be that the court will reach the opposite conclusion. In other words, upon federal questions, the federal court is not merely a rubber stamp for approving the decisions of the state courts. Having jurisdiction, it is its duty to determine the constitutional question. If the circumstances are such that it appears to the court that no adequate cause for issuance of the writ is presented, it may, in its discretion, rely upon the state court decisions, but it is not bound to do so and should not do so if it is convinced on hearing that a constitutional right has been violated." 238 F.2d at page 314.

In its first consideration of this matter the district court had before it only the petition for writ of habeas corpus with two attached exhibits, namely, the transcript of the arraignment proceedings in the Criminal Court of Cook County, Illinois, and a copy of the order of the Supreme Court of Illinois affirming the lower court's denial of the petition prosecuted under the Post-Conviction Hearing Act. In obedience to the order of this court on remand the district court ordered respondent to show cause why the writ should not issue. Thereupon, respondent filed its answer setting out a detailed factual statement in answer to the allegations in the petition. As a part of its answer, respondent also filed a complete transcript of the entire record and evidence in the proceedings in the criminal court, including the post-conviction hearing, together with an extended affidavit of John M. Branion, the court appointed Public Defender for petitioner in the proceedings leading to conviction. Petitioner replied with a detailed factual statement and citation of authorities. Argument was heard by the court and this was followed with a written citation of authorities by both parties. The matter was taken under advisement by the court for almost two months, following which that court filed its memorandum opinion. United States ex rel. Wiggins v. Ragen, D.C.N.D.Ill. 1957, 150 F.Supp. 465, and about six weeks later entered its order which is the subject of this appeal.

At the hearing by the court below on the remand from this court petitioner did not offer any oral testimony, and on this appeal does not contend that he was not afforded a proper "hearing." A careful examination of the record shows that the district court had enough additional matters before it on which to predicate its finding and order and did, in fact, comply with our remand. The ultimate contested issue before us, therefore, is whether the district court erred in holding that the action of the state court did not deprive petitioner of any of his constitutional rights under the due process clause of the Fourteenth Amendment.

It is established by the record that petitioner was first arraigned in the state court on January 24, 1951 and represented to the court that he intended to procure private counsel, and, on his motion, the cause was continued to February 5, 1951. At the time of arraignment the court admonished petitioner to get his lawyer and stated that if he could not get one the court would "be glad to supply you with the Public Defender so that he can prepare your cases for disposition."

On February 5, 1951, the cause was called again and petitioner advised the court that he did not have a lawyer and asked the court to appoint one "for the time being." He then testified under oath that he had no financial means of his own to employ a lawyer but that he was hoping someone on the outside might raise some money for him. The court asked him again if he wanted a lawyer appointed "to aid in your defense" and he answered that he did. The court then appointed the Public Defender to represent petitioner and a plea of not guilty was entered to a series of eight indictments. At the same time the court explained the nature of charges, the statutory punishment for the crime charged and his right to have counsel. Petitioner's public counsel then advised the court that he had conferred with petitioner in jail before he was brought into court, and petitioner confirmed in open court that he wanted a bench trial and at least a month's continuance "for preparation of the case." Accordingly, by agreement, the case was set for trial on March 5, 1951, and was continued until that date. The record further shows that petitioner was named as sole defendant in four indictments and with one Peter Tye in four others.

On March 5, 1951, the case was again called for trial with John Branion, as a Deputy Public Defender, representing petitioner, and one Louis Gould representing Tye. Both counsel joined in a motion for a continuance, Branion informing the court that petitioner "is going to get his own lawyer", that "he realizes that this was continued once before for that purpose", and that "I think he should be given another opportunity." Petitioner then told the court that his relatives had raised some funds and were doing the best they could. The court then said that "I set today aside for this matter, but in view of the circumstances, he is entitled to consideration in having his own lawyer." Petitioner asked for sixty days time which the court refused, and then petitioner stated that three weeks "will be all

right." The case was set for trial on March 27, 1951, and continued on petitioner's motion to that date. Gould, as counsel for Tye, joined in all of this action.

On March 27, 1951, the case was called for trial again with Branion appearing for petitioner and Gould for Tye. Gould stated first that Tye wanted to withdraw his plea of not guilty and enter a plea of guilty. Branion then advised the court that petitioner had told him the day before that he had a lawyer, Clayton, but that "the lawyer couldn't get in", whereupon he had told him that Clayton knew how to get in if he was paid a fee. This interview had ended in a heated argument and because of it Branion informed the court. "I don't want to represent him; I don't want to see him even." Branion added that he had talked to Clayton in the court building that morning and Clayton said he was not in the case because they had not paid him anything and that "he wouldn't think of getting in it until they paid him his fee." The court responded that if Clayton "were coming into the case I would give him the courtesy of time to get ready."

The court ordered the trial to proceed and explained to petitioner several times his right to trial by jury, to which he replied each time that he was willing to accept a bench trial, "but I still want to be properly represented." After further instruction by the court as to his right to a jury trial, and that his guilt must be proved beyond all reasonable doubt, petitioner announced in open court, "I change my plea to guilty." At this point, *Branion protested this plea* and asked to talk to petitioner before it was accepted. Petitioner said he wanted to talk to Branion, whereupon Branion said that petitioner didn't want to talk to him the day before, that he didn't know what he had in mind and that "[h]e acted like a maniac yesterday to me." Petitioner told the court that "I don't have anything against him" and that he was willing to sit down and talk to Branion. The court announced that petitioner and Branion might have two hours for a

conference, and petitioner replied in the affirmative when asked if this was satisfactory. The court declared a two-hour recess and such a conference was held.

It is also established through Branion's affidavit that he interviewed petitioner in the county jail on February 23, 1951, at which time petitioner stated that he was guilty of the crime charged in the indictments, that he had no witnesses he wanted subpoenaed, that he had no defense and that he wanted 60 days continuance to enable him to hire private counsel. Also, that Branion visited petitioner in the jail on March 26, 1951, but that petitioner refused to talk to him stating that he did not want to be represented by the Public Defender and that he was going to get his own private counsel. Further, that on March 27, 1951, petitioner said in court that he was sorry for everything he had said to Branion and that he wanted him to represent him and was satisfied. In this affidavit it also appears that in the two-hour conference on the day of trial that Branion discussed the case with petitioner who again told him he was guilty, that he had no defense and no witnesses to subpoena, and *that he was mainly interested in getting the habitual criminal counts on each indictment waived;* that Branion spoke to the State's Attorneys regarding the possible waiver of the habitual criminal counts, that they agreed to such waiver in the event of pleas of guilty, that he reported this to petitioner "who stated that he was satisfied and that he would take a chance on the possible sentences of the Court on his pleas of guilty." Branion also swore that he had in his files a copy of an interview with petitioner taken on February 5, 1951 by the Public Defender and a questionnaire completed by petitioner in his own handwriting in both of which petitioner admitted his guilt and stated that he had no witnesses to be subpoenaed and that he desired a bench trial.

After the two-hour conference the court resumed its hearing and Branion announced that petitioner wanted to withdraw his plea of not guilty and enter a plea of guilty to the count of robbery with a dangerous weapon. The record shows a detailed personal examination of petitioner by the court as to each of the four indictments, the changing of his plea to "guilty", the nature of the charge, the extent of the penalty, his understanding of the proceedings, the right to a jury trial, and the record shows, further, petitioner's repeated persistence in entering his plea of guilty. The guilty pleas were entered in the four indictments in which petitioner was charged jointly with Tye. The other four indictments in which petitioner alone was charged were *nolle prossed.*

Before passing sentence the court heard evidence in aggravation from the four victims named in the four indictments, the police officers, petitioner and Tye, and considered signed confessions of the defendants. It was clearly established that petitioner had two prior convictions with imprisonment in Tennessee and Illinois; that he and Tye had committed a series of armed robberies about the time of those charged in the four indictments; that petitioner used a dangerous weapon in these robberies and, in most instances, brutally beat and kicked his victims with resulting serious personal injuries; that petitioner had made a voluntary oral and written confession and complete admission of guilt as to each charge; and that he voluntarily testified in this hearing and confirmed his prior confessions. It is shown that Branion participated in the cross-examination of some of the witnesses and at the conclusion made a strong plea for a light sentence for petitioner. *The state waived prosecution of petitioner on the habitual criminal charges.* The court sentenced petitioner to the penitentiary for a term of from sixty years to life imprisonment in each case, to run concurrently.

At the risk of unduly extending this opinion, we felt that the long history of this litigation required the foregoing full statement of facts. Our search of the record completely satisfies us that the court of conviction not only did not deny petitioner any of his constitutional

rights but went to great lengths to see that they were safeguarded. Petitioner was given three continuances to enable him to employ private counsel and the court did not abuse its discretion in refusing a further continuance for this purpose. Melanson v. O'Brien, 1 Cir., 1951, 191 F.2d 963, cited by petitioner, is authority only for the proposition that an accused should be afforded a reasonable opportunity to secure counsel. In that case, accused was confined in jail in default of raising bail and was brought to trial six days after his indictment. From the record in that case it appeared that the trial court did not even ask if he desired counsel. People v. Bopp, 1917, 279 Ill. 184, 116 N.E. 679, also cited by petitioner, held that appointed counsel should be given adequate time to prepare a defense. Adequate opportunity was given for that purpose in the instant case in light of the fact that petitioner admitted guilt, that he had no defense and no witnesses to subpoena.

■ The record establishes that the court did not appoint "hostile counsel" for petitioner and that petitioner did not enter a "despairing" plea of guilty. There is every reason to conclude from this record that petitioner was seeking to avoid prosecution under the Habitual Criminal Act S.H.A. Ch. 38, § 603.1 et seq. and in this he was successful. His dissatisfaction seems to arise from the severity of the sentence, which the court imposed only after hearing evidence in aggravation, and this testimony proved to be an undisputed recital of a series of armed robberies marked with extreme brutality, coupled with two prior convictions.

The district court in a proper hearing of the petition for habeas corpus on remand found that petitioner's constitutional rights had not been violated at the time of his trial in the state court. It further found that petitioner's claims were without merit and that no adequate cause for issuance of the writ was presented. In other words, the extraordinary circumstances *alleged in the petition*, requiring a hearing thereon by the district court, *on proof* fell far short of convincing the court that the state court did not correctly settle the questions presented. We cannot say the district court abused its discretion in so holding. Its denial of the petition for habeas corpus fully meets the rules set out in our prior opinion. 238 F.2d 309, 313, supra.

We express our appreciation of the thorough and capable representation of petitioner by Mr. Edward R. Lev, whom we appointed.

The order below dismissing the petition is

Affirmed.